* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * RULINGS ON PROCEDURAL MATTERS
At the hearing before the Full Commission, plaintiff renewed her Motion to Receive Additional Evidence, consisting of medical records of Dr. Kathryn Trotter from Duke University Medical Center dated June 4, 2007. Defendant had no objection to the documents being made *Page 2 
part of the record. Therefore, the Commission hereby enters the additional evidence into the record for whatever evidentiary value it may have.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On March 17, 2004, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant. Defendant was self-insured for workers' compensation coverage.
3. Pursuant to the I.C. Form 60, plaintiff's average weekly wage was $544.04, which yields a compensation rate of $362.70 per week. However, a subsequent Form 22 wage chart revealed plaintiff's actual average weekly wage is $522.28, which yields a compensation rate of $348.21 per week.
4. On March 17, 2004, plaintiff sustained a right breast injury as a result of an accident arising out of and in the course of her employment with defendant.
5. Defendant paid plaintiff compensation for total disability from April 25, 2005 until May 8, 2005, and from June 20, 2005 until June 26, 2005.
6. A Pre-Trial Agreement was submitted into evidence by the parties.
7. The following documents were admitted into evidence at the hearing before the Deputy Commissioner:
 a. Stipulated Exhibit #1 — Industrial Commission Forms, Awards, Orders; plaintiff's medical records, plaintiff's discovery responses *Page 3 
 b. Plaintiff's Exhibits #1 2 — Photographs of plaintiff's right breast
 c. Plaintiff's Exhibit #3 — Letter from plaintiff to John Hedrick
 d. Defendant's Exhibit #1 — Payment history record for benefits paid to plaintiff
 e. Defendant's Exhibit #2 — Affidavit of Delphine Goins
8. The issues before the Full Commission are whether plaintiff is entitled to compensation for serious bodily disfigurement pursuant to N.C. Gen. Stat. § 97-31(22); whether plaintiff is entitled to future medical compensation pursuant to N.C. Gen. Stat. § 97-25.1; and whether plaintiff is entitled to temporary total disability benefits from June 27, 2005 until July 9, 2005.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 59 years old. She completed high school and two years of business college. In September 2000, plaintiff was hired by defendant as a research aide to assist an economics group with management of documents and to perform data entry.
2. On March 17, 2004, plaintiff was working in a confined space and attempted to open a metal filing cabinet drawer. The filing cabinet door was stuck and would not open freely. Plaintiff pulled forcefully on the drawer, it opened suddenly and the corner of the drawer struck the lower portion of her right breast.
3. Following the incident on March 17, 2004, plaintiff's right breast became tender. *Page 4 
Within several days after the incident, she developed a knot on her breast. A few days after the knot developed, it spontaneously burst open, releasing blood and pus. Plaintiff sought treatment from defendant's occupational health department and from her family physician, Dr. Lee Wilke. Dr. Wilke palpated the wound and expressed a small amount of purulent liquid.
4. Dr. Wilke continued treating plaintiff's breast abscess, but as of June 15, 2004, her breast was still draining. Dr. Wilke referred plaintiff to Dr. Laura Gunn, a board-certified general and plastic surgeon, for de-epithelialization and reconstruction of her right nipple. Dr. Gunn performed surgery on plaintiff's right nipple on September 22, 2004. After surgery, plaintiff continued to receive follow-up treatment from Dr. Gunn, who treated her breast wound with antibiotics and silver nitrate. Dr. Gunn testified that treatment with silver nitrate is painful, as it cauterizes tissue in an effort to retard tissue growth. Plaintiff required several treatments with silver nitrate following her first right breast surgery.
5. As of February 7, 2005, approximately 11 months after her injury, plaintiff's right breast continued to drain. When Dr. Gunn examined plaintiff's breast on that date, she found and removed a piece of suture material from the area of plaintiff's breast that was draining.
6. Despite her efforts, Dr. Gunn was unable to achieve closure of plaintiff's breast wound after the first surgery. Therefore, on June 21, 2005, Dr. Gunn performed a second surgery to debride and cleanse the wound. Plaintiff was released to return to light duty work on June 27, 2005. The second surgery was eventually successful in closing plaintiff's right breast wound.
7. On June 4, 2007 plaintiff was evaluated by Dr. Kathryn Trotter, a surgeon at Duke University Medical Center for breast discomfort and discussion of possible surgery of the hidradenitis. Plaintiff declined to have the surgery at that time. *Page 5 
8. As a result of her injury, plaintiff was incapable of earning wages in any employment from September 22, 2004 through October 1, 2004, for which she has not been compensated. Plaintiff was also incapable of earning wages in any employment from April 25, 2005 through May 8, 2005 and from June 20, 2005 through June 26, 2005, for which periods compensation has been paid by defendant. Although plaintiff testified that she missed work from June 27, 2005 through July 9, 2005, defendant's payroll records show that plaintiff worked on those dates.
9. Plaintiff received several periods of temporary total disability benefits from defendant, but was compensated at the incorrect compensation rate. Accordingly, defendant is entitled to a credit for overpayment of benefits made to plaintiff in the amount of $14.49 per week for each week that benefits were paid at the incorrect compensation rate.
10. Plaintiff's injury and the resulting infections involved the nipple and areolar complex of her right breast. The areolar complex is a heavily innervated part of the body. As a result of her infections, surgery and resulting tissue loss, the appearance of plaintiff's right breast and nipple is seriously marred. Her breast, nipple and areolar complex are misshapen. Her nipple and areola have sustained a permanent loss of pigment which can only be masked by tattooing, a procedure that the plaintiff does not intend to undergo. Dr. Gunn testified and the Commission finds that this disfigurement and scarring is permanent.
11. In addition, Dr. Gunn testified to a reasonable degree of medical certainty and the Commission finds that it is probable that plaintiff's hypersensitivity was a result of her March 17, 2004 injury. Plaintiff's breast and nipple are extremely sensitive to touch, heat and cold. Plaintiff is unable to tolerate the discomfort caused by a seatbelt touching her breast. Exposure to hot and cold temperatures causes pain and discomfort. Due to her hypersensitivity, plaintiff is *Page 6 
awakened frequently during the night due to pain and discomfort. Consequently, plaintiff does not rest well. Plaintiff is unable to tolerate the discomfort caused by an ordinary brassiere and must wear a heavily padded brassiere to minimize her pain and discomfort. Dr. Gunn testified and the Commission finds that the hypersensitivity of plaintiff's breast and nipple are permanent. Dr. Gunn also stated that plaintiff may benefit from additional treatment or therapies to help her sensitivity to pain.
12. Plaintiff experiences pain and discomfort not only in the breast area, but also in her right chest and right shoulder area. She drives to and from work and is exposed to weather elements and temperature changes of heat and cold during her work hours, which also cause her pain and discomfort.
13. Plaintiff's scar on her breast is not visible while she is at work, nor does she intend to seek employment in which her scar would be visible. However, the pain and discomfort resulting from the permanent scarring and bodily disfigurement may reasonably be presumed to lessen plaintiff's future earning capacity. Plaintiff's future employment choices are limited because the hypersensitivity and resulting discomfort would prevent her from working in a job environment with temperature extremes or in a job that required extensive driving and use of a seat belt. Also, the negative effect on her ability to sleep may have an adverse effect on plaintiff's ability to perform her job.
14. As a result of her injury by accident, plaintiff has sustained scarring to her breast which could be considered repulsive to other people.
15. The Full Commission has viewed plaintiff's scars and considered her testimony at the Deputy Commissioner's hearing regarding her pain and discomfort. As a result of her injury by accident, plaintiff has suffered serious and permanent bodily disfigurement to such an extent *Page 7 
that it may reasonably be presumed to lessen her future earning capacity. Therefore, the Commission finds that plaintiff is entitled to $6,000.00 for her permanent scarring and bodily disfigurement of her right breast.
16. There is a substantial risk that plaintiff's injury will require future medical treatment.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 17, 2004, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant, which resulted in an injury to her right breast. N.C. Gen. Stat. § 97-2(6).
2. Subject to a credit of $14.49 per week for each week plaintiff received compensation from defendant at the incorrect compensation rate, plaintiff is entitled to payment of temporary total disability compensation at the rate of $348.21 per week from September 22, 2004 until October 1, 2004. Plaintiff is not entitled to compensation for the period June 27, 2005 through July 9, 2005. N.C. Gen. Stat. § 97-29.
3. As a result of her injury, plaintiff sustained a serious, permanent bodily disfigurement which causes daily pain and discomfort that may diminish her future earning capacity. For her serious bodily disfigurement, plaintiff is entitled to equitable compensation in the amount of $6,000.00. N.C. Gen. Stat. § 97-31(22); Blackwell v. MultiFoods Management, Inc., 126 N.C. App. 189, 484 S.E. 2d 815, disc.review denied, 346 N.C. 544, 488 S.E.2d 796 (1997). *Page 8 
4. Plaintiff is entitled to payment by defendant of all medical expenses incurred or to be incurred as a result of her compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25,97-25.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1 Defendant shall pay plaintiff temporary total disability compensation at the rate of $348.20 per week from September 22, 2004 through October 1, 2004, subject to a credit of $14.49 per week for each week plaintiff received compensation from defendant at the incorrect compensation rate. This amount shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 4 below.
2. For her serious, permanent bodily disfigurement, defendant shall pay plaintiff equitable compensation in the amount of $6,000.00. This amount shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 4 below.
3. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff in paragraphs 1 and 2 of this AWARD is approved for plaintiff's attorney and shall be paid as *Page 9 
follows: 25% of the lump sums due plaintiff shall be deducted from those amounts and shall be paid directly by defendant to plaintiff's attorney.
5. Defendant shall pay the costs.
This 3rd day of October, 2007.
 S/______________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/______________________ PAMELA T. YOUNG CHAIR
 S/______________________ DIANNE C. SELLERS COMMISSIONER *Page 1